Good morning, your honors. Reuben Iniguez, appearing on behalf of the appellant and defendant below, Alfonso Hernandez-Reyes. In this habeas corpus case, your honor, we're dealing with the issue of shackling during trial and Mr. Hernandez-Reyes has two claims. One is a due process violation and one is ineffective assistance of counsel. Let's start with much of a problem counsel who has neither his lawyer nor the judge even knew there was a shackle on his leg. I respectfully disagree, your honor. I would start... Well, they both said so. I would start with what we're concerned with here today in this case is the state post-conviction courts finding and whether deference is entitled to that finding and both the post-conviction court as well as the district court as well as the unrefuted record in this case shows that Mr. Hernandez-Reyes was in fact shackled during trial. I'd start with the district court's finding, your honor, page 279 of the excerpt of record. During the ensuing trial, petitioner was restrained with the leg brace under his pants with the bottom protruding from his right pant leg. The jurors saw petitioner walking into the courtroom while he wore the leg brace. Petitioner's counsel did not object to the leg brace nor did the trial court conduct a hearing to determine the necessity of the leg brace. I'd turn to, I'd ask the courts to call this attention to pages 80 and 81, rather 83 and 84. The court specifically questioned Mr. Hernandez-Reyes at the post-conviction trial. Did the leg brace fit over your pants or were they? Was it under your pants? And he responded, under my pants. Then the court made its issue here. It says that it was satisfied that he had failed to establish a sufficient basis for relief on the shackling issue specifically. The real issue would be is whether or not the court held any sort of a hearing as required to authorize this in front of the jury. Implicitly, again, finding that he was restrained. And the record really is silent on that, the holding of the hearing. But doesn't he have a burden to come forward with that evidence at that hearing? I mean, that's the purpose of the hearing, in order to determine whether he was prejudiced. A, whether he was shackled, and B, whether he was prejudiced. Isn't the burden on him to adduce sufficient evidence to answer those two questions? And that is that post-conviction hearing we're talking about. Yes. Yes. The burden is on him. Right. And the trial court said, I've listened to the evidence and I'm not satisfied that it was sufficiently prejudiced. And that is exactly why that finding is objectively unreasonable. The only evidence that was introduced at that trial was introduced on his behalf. Right. But the evidence is limited to the fact that the only thing that could be seen was a bit of it from the bottom of the leg. So, as I read the trial court's findings, what the trial court is saying is, to the extent that there was a leg brace here, it was essentially not terribly noticeable. And therefore, he wasn't prejudiced by it. Your Honor, what the court found is that he was wearing a restricted device. And based on nothing other than speculation. But the court also said that the courtroom was full of jailers and deputies who are hovering around this man. And, I mean, this seems to me to be one of those issues that is probably sort of keenly within the competence of the trial judge in order to within the context of the entire courtroom, this particular form of restraint would be, you know, would lead to an unfair trial. I couldn't agree more. That's exactly within the promise of the trial court. The problem here is that the trial court, which is required under Supreme Court law, held no hearing, did not address other less restrictive means. They simply shackled the gentleman with no hearing, with no evidence whatsoever that he was a danger. Well, but that goes back to Judge Readley's questions. If the trial judge wasn't aware of it, and there was no objection made by the defendant, for what... Why would the court have called such a hearing? Nobody brought it to the trial judge's attention. The record at the trial level, Your Honor, does not contain any reference to an objection or any reference to the trial judge's awareness of the situation. Can I ask you this? Because the problem that I think all three of us are having is, what's the harm? And there's some evidence from... That we may... We may infer, for example, from his own lawyer's testimony that he didn't even know his own client had it, that this wasn't particularly conspicuous. What's the standard for determining prejudice resulting from shackling? The standard, Your Honor, according to the Supreme Court at Illinois v. Allen, is that it is inherently prejudicial to be presented before a jury in this manner. Inherently prejudicial. Now, even... That is to say, once we find shackling, we must find prejudice? That is what the Supreme Court has held. That is what the Oregon cases that I've cited, two cases, Kessler, and I cite the other in my brief as well, inherently prejudicial. Once you find the shackling, that there is prejudice. And in this case, there would be actual prejudice. We're dealing with a case here, Your Honors, where we have the testimony of an eight year old girl, that the physical evidence was very weak. We had an administrative doctor who indicated that all indications were normal in every respect. But there are different kinds of shackling, though. The Supreme Court cases that I am aware of deal with the arm and leg shackles, where the guy has a chain around his waist, and there's no doubt when he walks into the courtroom that he's shackled. Here, we have a different kind of a device, as I read the record, and it is, as Judge Fletcher termed it, less obtrusive or less visible than the typical kind of shackling that the Supreme Court has reviewed in those cases that have led to the strong language that you're quoting. Your Honor, the cases... I think you're asking us to produce a per se rule, that if there's any steel on this guy at all, it's per se prejudicial. And I'm not sure I'm willing to go quite that far. Well, the cases don't distinguish and say, a handcuff is okay, or this kind of a brace is okay. What we have here is a leg brace that inhibited his walking. Do we have a picture in the record of what this thing looked like, so that we're sort of stuck with verbal descriptions? The description was a bracelet around the right ankle, with a bar leading up to the thigh, and then another brace around... Underneath the pants. Underneath the pants, protruding and visible, a white or steel claw that was visible to the jurors. And they were in the courtroom every time he walked in, and every time he walked out. And again, we're looking at the post-conviction court. The post-conviction court and even the district court found he was restricted, and the jurors saw it. I mean, how would that kind of... Do we have a finding that the jury saw it, or do we have a finding that the jury could have seen it? Again, the district court, at 279, the jurors saw a petitioner walking into the courtroom while he wore the leg brace. Yeah, that doesn't... I mean, I'm not sure how closely I want to parse that, but that does not say they saw the brace. That's how I would read that, Your Honor. That he's wearing it and they saw it. But it's not compelled by that. And I would say... And I guess the question I have for you, Mr. Davis, is how would that be different from someone who had suffered polio as a child and had to wear a leg brace for medical reasons, because the leg brace is weak. Your Honor, the problem we have here is the Supreme Court test. There's a hearing that's required. You have to show he's dangerous or a threat. There could be all sorts of reasons. Well, there was a hearing, but we're wrestling with the fact that the facts don't establish as fully as you need them to establish, that A, there was visible shackling, and B, that it led to the prejudice of the defendant. I mean, this is a very odd case where the trial judge and the defense lawyer didn't even know that this device was on, and we've got this sort of ambiguous post-conviction hearing in which a finding is made that it wasn't prejudicial because of apparently the manner in which it was concealed. And this is starting to sound a lot less like the traditional shackling case. And as Your Honor suggests, I think, again, it's off the record. Yes, it could be polo. It could be a medical disease. It could be, as the court found here, normal part of the jail procedure. That's nowhere in the record. There's no evidence to support any of that. And I would suggest that- But isn't it his burden in the face of the findings on post-conviction review? Doesn't he have the burden to establish prejudice? And I would respectfully suggest, Your Honor, he met his burden. That is the problem here. The state, once he comes in with his evidence, his unrefuted testimony, the state could easily have gone to the bailiff, the court, the DA, the jurors, anybody, and brought an evidence that he wasn't a faggot and no one saw it. There's no question that both sides could have done more to answer our concern over the state of the record. The question is whether on this record, this panel can declare that the state court's post-conviction conclusion that this did not prejudice him was objectively unreasonable. And as I understand AEDPA, that means I have to essentially find that I'm compelled to believe that the state court was objectively wrong in reaching this conclusion. And on this record, I'm having a hard time getting over that AEDPA hurdle. Your Honor, as I see it, it's fairly simple. If we look at Illinois v. Allen and Holbrook v. Flynn and the test that's required there, and then we look at the factual findings of the post-conviction court and the speculative finding that this was normal part, that the jurors could have seen this as just a normal part of the procedure. Well, that was not in the record. There's no evidence of that. That's the problem. There was no hearing. There was no finding of dangerousness, no threats, none of those things that are required, no lesser restrictive alternatives were met. This was not used as a last resort. It was used as a first resort. That's the problem. We're just over. Why don't you, why don't we hear from the other side and then you'll have more for about. Thank you, Your Honor. Thank you. May it please the Court, Ryan Kahn appearing on behalf of Defendant Mr. Lambert in the state of Oregon. There was a lot of interest during opposing counsel's oral argument in whether the jurors saw it, whether the trial court saw it, and I'm going to get to that, but I'd like to start first with, I think, maybe what is perhaps the easiest and quickest answer, and that is something that one of your honors touched on, I don't remember which one, and that is that there was no objection at the trial court. As a matter of due process, to show a due process violation, there needs to be an objection that needs to be brought to the criminal trial court's attention under Estelle versus Williams so that the court then is faced with the choice of either compelling the petitioner to wear the restraint or, you know, choosing not to. Because there was no objection, because it wasn't brought to the trial court's attention, there was no compulsion, and hence there was no constitutional violation under Estelle. You're saying there's no compulsion unless the trial court compels it? That's right. And that's Estelle versus Williams. I understand that there is compulsion if the trial court compels it, but I don't think he got to say it in the morning before he walked in, you know, I'd prefer not to wear this. Well, I think what, I guess what I'm saying is he, either he or his counsel is required to object so that the trial court then orders him to wear it for there to be the necessary compulsion for the constitutional violation to lie, otherwise, under Estelle, he's waiving that issue. Well, waiver is different from compulsion. You may say that, you know, he didn't do it and therefore there's state court procedural default. I mean, there may be all sorts of things to follow from a failure to object, but I don't think it's not, I don't think it means he wasn't compelled to wear it. Well, in Estelle, they sort of treat it as a waiver issue, but they talk, but they explain why it's a waiver in terms of the compulsion. So I guess it's, this isn't an issue, and that's another thing I wanted to touch on is Fitchner in his reply brief treats the state's waiver argument under Estelle as if it's a procedural default issue when it's not. It actually is a substantive part of the analysis under Estelle. But moving on past that to the... Well, the only question I have that's troubling me at all is this prejudice notion. I mean, because there is language in the Supreme Court that shackling is inherently prejudiced, very prejudicial, and what's your response to that? Well, and that's something that I was going to address. That's not exactly what the Supreme Court has said, and I think what counsel's referring to is Holbrooke versus Flynn. And in Holbrooke, what the court said was, the analysis is that the court will look at the specific situation case by case, they'll look at the shackle, the restraint, in this case the leg brace, and in looking at it, make a decision as to whether it is inherently prejudicial. And what Holbrooke was going for in that decision was that you can prove actual prejudice, so you can prove that the jurors actually were biased against you because of the restraint, or you can prove that this particular restraint was so bad that the jurors must have looked at you differently or inferred your guilt from the shackle. So in Holbrooke, it is a case-by-case analysis. It's not a per se rule of prejudice. And that is apparently what the post-conviction, the state post-conviction court was getting at in this case when the court made its ruling. And I have the court's ruling set forth at page 8 of the red brief. And what the court says is, I'm satisfied that this sort of a restrictive device is no more prejudicial than simply that of it becoming apparent to the jury, which is impossible to exhibit that a defendant is in custody while the trial is going on because there are jailers and officers. And then I think the important part also is when the court said, this sort of a restriction would not tend to make a jury feel that he was so dangerous as to require it, but it can be considered as simply a normal part of a jail procedure. Although the court's not explicitly talking about Holbrooke and isn't citing to Holbrooke, it's apparent that that's the analysis that the court is undertaking. In other words, is this leg brace so bad that the jury is going to infer prejudice from it? And the court said that it wasn't. And under ADIPA or ADIPA, unless that is contrary to or an unreasonable application of Supreme Court precedent, this court should defer to it. Now that is sort of a... I'm not sure I'm fully there yet. I'm more tempted actually by Judge Tolman's suggested line of analysis, and that is to say that the shackling cases where the court has stated that it's inherently prejudicial, the shackling is obvious. There are no questions but what everybody saw it. Right. That's correct. So for example, our case of Duckett where we hold the shackling is inherently prejudicial even during the sentencing phase. Well, the shackling is right there. He's got his chain around his waist and he's handcuffed. Right. And that gets to sort of the other point that I raised in the red brief. There's sort of three different arguments that I've presented. One is the waiver, which we've already discussed. The third one is the court's ruling was essentially an application of Holbrooke, and then the second one is the one that you're talking about now, and that is there is no evidence in the record to show that any of the jurors saw this restraint or knew what it was. If they did see it, they may have thought that it was something that he was wearing for medical reason, and there's simply no evidence to show that they knew that he was wearing it. I disagree with opposing counsel's contention that there is a finding that the jurors saw it. I think, Judge Tallman, the point that you made or the question that you asked I think is more to the point, and that is perhaps he was in front of the jury or walking in front of the jury a couple of times during the trial when the jury was there, but there is no finding that the jury saw it, and there is definitely no finding or any sort of evidence to show that the jurors knew what it was, which I think is a requirement or is a prerequisite for the constitutional violation as well, and I think that is also implicit in the Holbrooke and the Allen decisions where it's assumed that the jury sees whatever condition it is that the criminal defendants were challenging in those cases. What's really odd about this case is that neither the trial judge nor the defense lawyer was even aware of it. I mean, I've tried a lot of cases where the first thing defense counsel does if the marshal or the sheriff forgets to take the shackles off is to immediately object out of the presence of the jury, and I've never seen a case where a trial judge didn't order the shackles removed, and here there was no such opportunity given to the trial judge to address the problem if there was a problem. Right. I think that's correct, and that sort of gets back to the Estelle issue that if the judge doesn't know that the petitioner was wearing a leg brace that's almost completely hidden beneath his pant leg, then there's not really any way that the court can hold a hearing or know that it needs to do so. So that's sort of tied into the sort of Estelle versus Williams waiver argument of the state case. If I could have just a moment. I wanted to touch briefly on the, what we've been talking about thus far is the due process sort of trial court claim that the trial court heard by not conducting some sort of inquiry. I'd like to touch briefly on the ineffective assistance of counsel claim in the event the court has any questions about that. Just to briefly say that this issue is procedurally defaulted under state law under Oregon revised statute 138550 subsection 3. The petitioner is required to put, include his claim in the petition for relief or else it is deemed waived. He didn't do that and therefore under Oregon law that issue was waived and procedurally defaulted. Now the petitioner makes an argument in his reply brief on that issue and he suggests that somehow the ineffective assistance claim was raised because at opening statements in the state post conviction relief proceeding, he sort of made a catch all phrase that all the claims that I'm making are violations of due process and also claims of ineffective assistance and I think another, I think he made another claim as well. And the state's position is that that's not sufficient under either Oregon law to raise the issue or under Duncan versus Henry's requirement that he fairly, that give the state courts a fair opportunity to address the claim. For reasons also stated in the red brief, I've addressed the merits of the ineffective assistance of counsel claim, but we'll not plan on saying anything unless the court asks questions. I think I'm done. Thank you. Okay. Thank you very much. Would you like a minute? Thank you, Your Honor. Long ago the Supreme Court recognizes that there is fundamental constitutional rights and that was in Johnson versus Zerbst, right to due process to a fair trial is one of such right. You cannot waive a right to a fair trial. But Estelle says that you've got to raise it to the trial court before you can preserve it and there's no question here that there was no objection raised. The record is silent as to an objection, Your Honor. Is that different from saying there was no objection when you say the record was silent? We have an excerpt, unfortunately, as is often the case, we have an excerpt that's not complete. There is no, none of the parties have voir dire. None of the parties have certain parts of this transcript that may have been raised. I don't know. That's off the record. I don't know. The record we have here is silent on any sort of objection. Williams versus Estelle, a prison garb case, fundamentally different from Shackles. That's not different. Yes, it's true that in Williams they held that you have to object in order to be compelled. That is a different issue. Prison garb and shackling, the Supreme Court has recognized, inherently different because of the dangerousness, the idea that a juror can look at you with the shackles on and say, this person's a threat, this person's a danger, that security personnel have been sure about him, this person's guilty. How is that different from making the inmate stand trial in an orange jumpsuit or striped coveralls or whatever prison garb is these days? That does not indicate, Your Honor, for example, that he's a danger, that he's a threat, that some sort of need. I mean, it's obviously been deemed prejudicial where an objection was made. Yes. Prejudicial. But all that shows that the person is a defendant, that he's in custody, and that he's not wearing civilian clothes. It doesn't, like shackling, indicate that you are a danger or a threat and there's a need for the jurors to be concerned about you. So fundamentally different. And I would argue, again, that there can be no waiver. And as counsel points out, that argument, that argument was waived. At the post-conviction trial, there was no argument that an objection had to be made. This issue was addressed head on, on the merits, the entire way, with no objection being made that counsel or anyone at the trial level had not objected. So therefore, there was no compulsion. Thank you very much for your answer. Thank you, Your Honor. I thank both sides for the helpful argument in Hernandez-Reyes v. Lampert. That case is now submitted for decision. The next two cases on the calendar are submitted on the briefs. Chen v. U.S. Immigration and Naturalization Services submitted. Chavez-Perez v. Ashcroft is submitted. The next case on the argument calendar... Before we do the next case on the argument calendar, we'll take a five-minute break. The next case will be Rufai, if I'm pronouncing it correctly, v. Ashcroft. All rise. We'll extend the recess for five minutes. Thank you.
judges: Reavley , W. Fletcher, Tallman